IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| DANIEL B. CHAPP, | ) | |
| | ) | |
| Plaintiff, | ) | 4:04CV3021 |
| | ) | |
| V. | ) | |
| | ) | **MEMORANDUM** |
| BURLINGTON NORTHERN SANTA | ) | **AND ORDER** |
| FE RAILROAD COMPANY, a | ) | |
| Delaware Corporation, | ) | |
| | ) | |
| Defendant. | ) | |

On February 2, 2004, the plaintiff, Daniel B. Chapp, filed a complaint against the defendant, Burlington Northern Santa Fe Railroad Company (BNSF), alleging violations of the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51-60; a regulation promulgated by the Federal Railroad Administration; and the Federal Safety Appliance Act (FSAA), 49 U.S.C. §§ 20301-20306. (See generally Compl., Filing 1.) Now before me is the plaintiff's motion for summary judgment (see Filing 50) and its associated filings (see Filings 51-56). For the following reasons, I find that the plaintiff's motion must be denied.

## I.   BACKGROUND[1]

---

[1]The parties have submitted statements of facts in support of their respective briefs. (See Filing 51 at 7-10; Filing 53 at 3-7.) However, the evidence cited in support of these statements often fails to corroborate all of the parties' factual allegations. (E.g., compare Def.'s Br., Filing 53, Statement of Facts ¶ 8 (citing Chapp Dep. at 92) with Pl.'s Index of Evid., Filing 52, Cox Aff., Ex. 1, Chapp Dep. at 92.) In other instances, the supporting evidence is simply missing. For example, the plaintiff's statement refers to "Air Brake and Train Handling rules" and a "Safety rule" that are not identified in his Index of Evidence. (See Pl.'s Br., Filing 51, Statement of Material Facts ¶ 6.) Failures of this sort violate NECivR 7.1 and 56.1, and the parties should note that I have disregarded all allegations of fact—whether

The defendant is a corporation "engaged in the business of [a] common carrier by railroad in interstate commerce in Nebraska and other states."  (Br. in Supp. of Mot. for Summ. J. (Pl.'s Br.), Filing 51, Statement of Material Facts (hereinafter "Pl.'s Facts") ¶ 2 (quoting Compl., Filing 1, ¶ 1).)  At relevant times, the plaintiff was an employee of the defendant whose duties "were in furtherance of and . . . affected interstate commerce."  (Id. ¶ 1 (quoting Compl., Filing 1, ¶ 2).)

On July 22, 2002, at approximately 9:30 a.m., the plaintiff was called in to work and instructed to pick up an empty coal train in Omaha, Nebraska, and bring it to Lincoln, Nebraska.  (See Pl.'s Facts ¶ 3.)  The train had been split in two and separated in order to clear space for a road crossing.  (See id. ¶ 4.)  When the plaintiff arrived at the train, he found that handbrakes had been set on the first two cars on the rear portion of the train (that is, the first two cars following the space created for the crossing).  (See id. (citing Pl.'s Index of Evid., Filing 52, Cox Aff., Ex. 1, Chapp Dep. at 69:22-70:18, 71:4-9).)  After the plaintiff and the engineer re-coupled the train, the plaintiff attempted to release the handbrakes on those two cars.  (See id. ¶ 5.)  The handbrake on the first car released when the plaintiff pulled the quick-release lever. (See id.)  However, the handbrake on the second car did not respond to the quick-release lever.  (See id.)  The plaintiff attempted to release the handbrake manually by turning the handbrake wheel counterclockwise, but this too was ineffective.  (See id.) He then turned the handbrake wheel clockwise—which would tighten the handbrake—when it came loose suddenly and "spun him around."  (See id. ¶¶ 16-17 (quoting Chapp. Dep. at 72:6-7).)  Although the plaintiff has neglected to submit evidence on this point, he alleges that he injured his back when he was spun around by the handbrake wheel.  (See Pl.'s Br. at 5; Compl., Filing 1, ¶¶ 10, 13.)

The plaintiff reported this injury when he returned to Lincoln.  (See Def.'s Br.

_____

they are set forth by the plaintiff or the defendant—that have not been properly supported.

in Opp'n to Pl.'s Mot. for Summ. J. (Def.'s Br.), Filing 53, Statement of Facts (hereinafter "Def.'s Facts") ¶ 8 (Chapp)[2] (citing Chapp Dep. at 92).)  However, he did not report the handbrake as defective.  (See id. ¶¶ 5-7 (Chapp) (citing, inter alia, Chapp Dep. at 89:25-90:7).)  Apparently, the plaintiff believed that the handbrake was working properly (see id.), although he also claims that he had never before witnessed a handbrake operate as this one did on July 22, 2002 (see Pl.'s Facts ¶ 18).  Due to the plaintiff's failure to take note of the railcar where his alleged injury occurred, the relevant handbrake could not be identified with certainty.  (See Def.'s Facts ¶ 9 (Chapp) (citing Chapp. Dep. at 94:1-13); id. ¶ 1 (Vest) (citing Def.'s Index, Filing 54, Vest Aff.); see also Pl.'s Reply Br., Filing 55, at 4-5 (arguing that the plaintiff's inability to identify the relevant equipment is irrelevant).)  A number of railcars were inspected, but no "defects" were found in any of their handbrakes.  (See Def.'s Facts ¶ 1 (Vest); id. ¶ 1 (Peterson) (citing Def.'s Index, Filing 54, Peterson Aff.).)  In addition, the defendant's expert has opined that "[t]he mechanical operation of the vertical handbrake in question does not allow the wheel of the handbrake to spin without the application of force by the operator and . . . could not have released and spun on its own as described by Plaintiff in his deposition."  (Def.'s Index, Filing 54, Peterson Aff. ¶ 4(iii).)

The parties dispute whether the plaintiff was trained to tighten the handbrake wheel to try to release a handbrake that fails to respond to either the quick release lever or to the counterclockwise turning of the handbrake wheel.  (Compare Pl.'s Facts ¶ 10 with Def.'s Facts ¶ 2 (Gengler); id. ¶ 1 (James); id. ¶ 1 (Dance).)  In any event, it is undisputed that this "tightening method" is not set forth in the defendant's rules manual.  (See Def.'s Facts ¶ 11 (Chapp); id. ¶ 4 (Gengler).)  Instead, the "rules" state that if a handbrake fails to release manually after it has been charged with air, the car

---

[2]The defendant did not number the paragraphs of its statement of facts sequentially, but organized the paragraphs based on the evidentiary sources it cites. (See generally Def.'s Facts.)  Therefore, my citations to the defendant's statement of facts must identify the witness whose testimony is cited in support of a given fact.

is to be "bad ordered."   (Chapp Dep. at 61:11-62:24 (cited in Pl.'s Facts ¶ 10).)
Nevertheless, there is evidence that the "tightening method" was commonly used to
release stuck handbrakes, and that "air charging" was not performed.  (See Pl.'s Facts
¶¶ 8, 13-14 (citing Pl.'s Index of Evid., Filing 52, Cox Aff., Ex. 3, Dance Dep. at
12:5-13:17, 14:5-12); id. ¶¶ 9, 14 (citing Pl.'s Index of Evid., Filing 52, Cox. Aff., Ex.
4, James Dep. at 12:13-25, 15:21-24); id. ¶¶ 11-12 (citing Chapp Dep. at 62:25-63:22,
64:10-65:6).)

On February 2, 2004, the plaintiff filed his complaint against the defendant,
seeking, inter alia, damages stemming from the injury he allegedly suffered on July
22, 2002.  (See Compl., Filing 1.)  The complaint sets forth three "claims for relief."
The first is based upon FELA, 45 U.S.C. §§ 51-60; the second cites 49 C.F.R. § 231.2,
which is a regulation promulgated by the Federal Railroad Administration; and the
third cites 49 U.S.C. § 20302, which is part of the FSAA.  The plaintiff has moved for
summary judgment on each of his claims.  (See Filing 50.)

## II.    STANDARD OF REVIEW

### A.    Summary Judgment

A motion for summary judgment shall be granted by the court when "there is
no genuine issue as to any material fact and . . . the moving party is entitled to a
judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A "material" fact is one "that
might affect the outcome of the suit under the governing law . . . ."  Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists
when there is sufficient evidence favoring the party opposing the motion for a jury to
return a verdict for that party.  Id.  In determining whether a genuine issue of material
fact exists, the evidence is to be taken in the light most favorable to the nonmoving
party.  Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970).  If the moving party
meets the initial burden of establishing the nonexistence of a genuine issue, then the
burden shifts to the nonmoving party to produce evidence of the existence of a

genuine issue for trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  The nonmoving party "must present affirmative evidence in order to defeat a properly supported motion for summary judgment," Anderson, 477 U.S. at 257, and "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial," id. at 256 (citing Federal Rule of Civil Procedure 56(e)).

## B.  FELA

Congress enacted FELA in 1908 to address "injuries and death resulting from accidents on interstate railroads." Consolidated Rail Corp. v. Gottshall, 512 U.S. 532, 542 (1994) (quoting Urie v. Thompson, 337 U.S. 163, 181 (1949)).  FELA provides,

> Every common carrier by railroad while engaging in commerce between any of the several States . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, . . . for such injury . . . resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

45 U.S.C. § 51.  Ordinarily, a plaintiff must prove the traditional elements of a negligence claim—duty, breach, causation, and injury—in order to prevail on a FELA claim.  See, e.g., Adams v. CSX Transp., Inc., 899 F.2d 536, 539 (6th Cir. 1990).  However, the Supreme Court has "liberally construed" these traditional elements in order "to further Congress' remedial goal" under FELA.  Gottshall, 512 U.S. at 543. For example, a "relaxed standard of causation applies under FELA." Id.  Specifically, "If an employee is injured because of an unsafe condition, the employer is liable 'if its negligence played any part, even the slightest, in producing the employee's injury.'" Peyton v. St. Louis Southwestern Ry. Co., 962 F.2d 832, 833 (8th Cir. 1992) (quoting Davis v. Burlington Northern, Inc., 541 F.2d 182, 185 (8th Cir. 1976)); see

also <u>Gottshall</u>, 512 U.S. at 543 (quoting <u>Rogers v. Missouri Pac. R.R. Co.</u>, 352 U.S. 500, 506 (1957)).

Also, the defendant's duty of care is affected by the interplay between FELA and federal safety statutes.  "Under FELA, an employer has a duty to provide its employees with a reasonably safe workplace, including safe equipment." <u>Peyton</u>, 962 F.2d at 833.  "FELA does not require an employer to exercise the highest degree of care, but only the same degree of care as an ordinary, reasonable person would exercise in similar circumstances." <u>Martinez v. Union Pac. R.R. Co.</u>, 82 F.3d 223, 228 (8th Cir. 1996) (citing <u>Peyton</u>, 962 F.2d at 833).  <u>But see</u> <u>Ackley v. Chicago & N.W. Transp. Co.</u>, 820 F.2d 263, 267 & n.6 (8th Cir. 1987) (indicating that an employer's duty under FELA to provide a reasonably safe place to work is broader than a "general duty of due care").  Thus, "an employer is not liable if it had no reasonable way of knowing about the hazard that caused the employee's injury." <u>Peyton</u>, 962 F.2d at 833; <u>see also</u> <u>Brown v. Cedar Rapids & Iowa City Ry. Co.</u>, 650 F.2d 159, 161 (8th Cir. 1981); <u>Gottshall</u>, 512 U.S. at 543 (stating that FELA is not "a worker's compensation statute").  However, the Supreme Court has "extended the reach of the principle of negligence <u>per se</u> to cover injuries suffered by employees as a result of their employers' statutory violations, even if the injuries sustained were not of a type that the relevant statute sought to prevent." <u>Gottshall</u>, 512 U.S. at 543 (citing <u>Kernan v. Am. Dredging Co.</u>, 355 U.S. 426, 432-36 (1958)).  Therefore, if an employee can establish a violation of the FSAA,[3] the "negligence" component of a

---

[3]The Second, Third, and Seventh Circuits have found that the principle of negligence <u>per se</u> also applies to injuries resulting from employers' <u>regulatory</u> violations.  <u>See</u> <u>Morant v. Long Island R.R.</u>, 66 F.3d 518, 523 (2d Cir. 1995); <u>Eckert v. Aliquippa & S. R.R. Co.</u>, 828 F.2d 183, 187 (3d Cir. 1987); <u>Walden v. Illinois Central Gulf R.R.</u>, 975 F.2d 361, 364 (7th Cir. 1992).  The plaintiff argues that this rule should be applied in this case, and the defendant has offered no resistance to this argument.  Therefore, I find that if the plaintiff can establish that a regulation has been violated, the defendant's negligence is established as a matter of law.  Of course, to prevail the plaintiff must also demonstrate a causal connection between the violation

FELA claim is established as a matter of law, and "only causal relation is in issue." Carter v. Atlanta & St. Andrews Bay Ry. Co., 338 U.S. 430, 434 (1949); see also Urie, 337 U.S. at 189; Grogg v. Missouri Pac. R.R. Co., 841 F.2d 210, 212 (8th Cir. 1988). It should be noted that a violation of a safety statute or regulation does not give rise to a cause of action independent of FELA, see Urie, 337 U.S. at 189; Grogg, 841 F.2d at 212; rather, the elements of a plaintiff's various FELA-based claims differ depending upon whether the claim is based upon a violation of a federal safety statute or regulation (in which case the violation amounts to negligence per se under FELA), or under FELA alone (in which case the plaintiff must prove that the defendant was negligent).

## III.   ANALYSIS

As I stated previously, the plaintiff's complaint sets forth three "claims for relief." It appears that the plaintiff's first claim actually contains several distinct claims that have been "mingled in a single mongrel cause of action." O'Donnell v. Elgin, J. & E. Ry. Co., 338 U.S. 384, 391 (1949). (See Compl., Filing 1, ¶¶ 4, 11 (citing 45 U.S.C. §§ 51-60; 49 C.F.R. §§ 215.13 and 231.2; and 49 U.S.C. § 20302(a)); Order on Pretrial Conference, Filing 66, at Part C (indicating that the plaintiff's first claim is based upon a violation of 49 C.F.R. § 217.11).) The plaintiff's second claim appears to be an independent cause of action based upon a violation of a safety regulation, (see id. ¶¶ 19-23), and his third claim appears to be an independent cause of action based upon a violation of the FSAA. (See Compl., Filing 1, ¶¶ 24-28.) For the reasons set forth above, I take it that the plaintiff means to allege that the defendant was negligent as a mater of law under FELA because of its violation of a safety regulation (claim two) and the FSAA (claim three). (See supra Part II.B; see also Pl.'s Br., Filing 51, at 15-16 (quoting Wilson v. Union Pac. R.R. Co., 56 F.3d 1226, 1229 (10th Cir. 1995)).)

---

and his injury. See Grogg v. Missouri Pac. R.R. Co., 841 F.2d 210, 212 (8th Cir. 1988).

I shall analyze each of the plaintiff's claims for relief in turn to determine whether the plaintiff is entitled to summary judgment.

## A.    The Plaintiff's First Claim for Relief

In his first claim for relief, the plaintiff alleges that the defendant "negligently failed to perform" the following duties:

a.    The duty to inspect, maintain, and repair the handbrakes on the cars used on its line;
b.    The duty to implement, enforce, and train its employees in rules, methods, and procedures for the operation of handbrakes;
c.    The duty to respond to and take reasonable efforts to prevent from happening again incidents where employees of Defendant are subjected to or likely to encounter a handbrake that fails to operate as intended or inefficiently;
d.    The duty to comply with [49 C.F.R. § 231.2] . . . ;
e.    The duty to comply with [49 C.F.R. § 215.13] . . . ;
f.    The duty to comply with 49 U.S.C. § 20302(a) . . . .

(Compl., Filing 1, ¶¶ 11-12.)  Since the duties cited in subparagraphs (d) and (f) are the subject of the plaintiff's second and third claims for relief, I shall defer consideration of them.  (See infra Part III.B-C.)  As for the remaining "duties," I note that in his motion for summary judgment, the plaintiff argues only that the defendant violated FELA by breaching its duty to provide "a reasonably safe workplace" (Pl.'s Br., Filing 51, at 17-19) and by failing "to promote and enforce compliance with its rules," (id. at 19).  Thus, for the purposes of this motion, the plaintiff reduced the number of sub-claims set forth in his first claim for relief to two.  However, the Pretrial Order states,

> In Plaintiff's first claim for relief, Federal Employers' Liability Act (FELA) negligence action, the Plaintiff contends that Defendant BNSF was negligent in the following ways:

      1.      failing to promote, enforce, and train its employees in rules, methods, and procedures for the operation of handbrakes as required by 49 C.F.R. § 217.11.

(Order on Pretrial Conference, Filing 66, at 3.)  This order supercedes the pleadings and "control[s] the subsequent course of [this] action."  Fed. R. Civ. P. 16(e); see also, e.g., United States v. $84,615 in U.S. Currency, 379 F.3d 496, 499 (8th Cir. 2004). Therefore, I find that the plaintiff has abandoned all of the theories of liability alleged in his first claim for relief, except for the theory that the defendant violated FELA by "failing to promote, enforce, and train its employees in rules, methods, and procedures for the operation of handbrakes as required by 49 C.F.R. § 217.11."[4]

The plaintiff's argument in favor of summary judgment on this lone remaining theory is quite frail.  He states,

> The deposition testimony of Defendant's employees—including two of its Training Coordinators—clearly establishes that BNSF failed to properly promote and enforce compliance with its Air Brake and Train Handling rules and its Safety rules. . . .  The FRA instructs its Operating Practices ("O.P.") Inspectors to write violations when they encounter this situation.  As the FRA states in its Operating Practices Compliance

---

[4]I note parenthetically that the plaintiff would not be entitled to summary judgment on the theory that the defendant breached its duty to provide "a reasonably safe workplace," even if that sub-claim had not been abandoned.  This sub-claim is based upon FELA alone, without reference to a statutory or regulatory violation. (See Pl.'s Br. at 17-19.)  To prevail on such a claim, "the employee must show by direct or circumstantial evidence that (1) an officer, employee, or agent of the railroad was responsible, through negligence, for the presence of the unsafe condition; or (2) at least one of such persons had actual knowledge of its presence before the accident; or (3) the unsafe condition had continued for a sufficient length of time to justify the inference that failure to know about it and remove it was due to want of proper care." Brown v. Cedar Rapids and Iowa City Ry. Co., 650 F.2d 159, 161 (8th Cir. 1981). The plaintiff has failed to make any of these showings.

> <u>Manual</u>, "A railroad is in violation [of 49 C.F.R. Part 217][5] when it fails to promote and require compliance with its operating rules in the spirit intended by the regulation.   Clearly when compliance effectiveness erodes, the accident/incident risk and rate increase.   Given this circumstance, examination has found that, in these cases, the intent and requirements of the regulation has [sic] been compromised."

(Pl.'s Br. at 19 (citations omitted).)  I note preliminarily that the "Air Brake and Train Handling" and "Safety" rules referred to above were not included in the plaintiff's Index of Evidence, and, although the Operating Practices Compliance Manual has been included in the plaintiff's Index, (see Pl.'s Index of Evid., Filing 52, Ex. "VI"), the defendant has objected to it, arguing correctly that it has not been properly authenticated.  (See Def.'s Br. at 2.)  See also <u>Stuart v. General Motors Corp.</u>, 217 F.3d 621, 635 n.20 (8th Cir. 2000) ("To be considered on summary judgment, documents must be authenticated by and attached to an affidavit made on personal knowledge setting forth such facts as would be admissible in evidence or a deposition that meets the requirements of Fed. R. Civ. P. 56(e).  Documents which do not meet those requirements cannot be considered.");  NECivR 7.1(a)(2)(C).

Even if I set aside these evidentiary shortcomings, it is clear that the plaintiff has failed to demonstrate that he is entitled to judgment as a matter of law.  First, I note that the evidence does not establish that the defendant failed to promote and enforce compliance with its operating rules in the appropriate "spirit."  I take it from the un-authenticated exhibit submitted by the plaintiff that this "spirit" is violated when compliance with the rules erodes and leads to an increased risk of accidents.  However, the plaintiff seems to have focused solely upon the issue of compliance—arguing that employees frequently used a method of releasing handbrakes that was not spelled out in the operations manual—and has neglected the issue of risk.  Notwithstanding the plaintiff's alleged injury, there is no evidence that

---

[5]This alteration was made by the plaintiff.

the "tightening method" increases the risk of accidents,[6] and I am not persuaded that the plaintiff can establish a violation of the "spirit" of 49 C.F.R. § 217.11 without demonstrating that the defendant's failure to promote compliance with a particular rule was risky.

Second, and perhaps most importantly, the plaintiff has ignored completely the question of causation. I appreciate that the standard of causation applied in FELA cases is "relaxed." Consolidated Rail Corp. v. Gottshall, 512 U.S. 532, 542 (1994). However, in this case no malfunctioning handbrake has been located, and the defendant has submitted evidence that the design of the handbrakes would not allow the handbrake wheel to "release[] and [spin] on its own as described by Plaintiff in his deposition." (Def.'s Index, Filing 54, Peterson Aff. ¶ 4(iii).) There is also evidence that the plaintiff was in a poor position to manipulate the handbrake wheel. (See Def.'s Facts ¶ 3 (Gengler); Def.'s Index, Filing 54, Peterson Aff. ¶ 4(iv).) When the evidence is viewed in a light favorable to the defendant, it seems to me that a reasonable jury might discredit the plaintiff's testimony that he was injured when the handbrake wheel "spun him around" (Chapp. Dep. at 72:6-7) and might conclude that the plaintiff somehow caused his own injury, see Beimert v. Burlington N. Inc., 726 F.2d 412, 414, 415 (8th Cir. 1984) (indicating that defendant is not liable despite safety violation if the plaintiff's negligence is the sole cause of his injury). In other words, there is a genuine issue for trial with respect to the causation element of the plaintiff's claim.

For the foregoing reasons, I conclude that the plaintiff is not entitled to summary judgment on his claim that the defendant negligently "fail[ed] to promote, enforce, and train its employees in rules, methods, and procedures for the operation of handbrakes as required by 49 C.F.R. § 217.11." (Order on Pretrial Conference, Filing 66, at 3.)

---

[6]Indeed, as I shall discuss below, it is disputed whether the "tightening method" caused the plaintiff's injury in this case.

11

## B.    The Plaintiff's Second Claim for Relief

In his second claim for relief, the plaintiff alleges that the defendant violated 49 C.F.R. § 231.2, and was therefore negligent as a matter of law.  This regulation provides that the number of handbrakes on certain railcars is to be the "[s]ame as specified" in 49 C.F.R. § 231.1(a)(1).  Section 231.1(a)(1) states that each car "shall be equipped" with "[o]ne efficient handbrake which shall operate in harmony with the power brake installed on the car."  (Emphasis added).  According to the plaintiff, the handbrake that allegedly injured him was "inefficient . . . and therefore in non-compliance with the provisions of 49 C.F.R. § 231.2," because "the quick release lever and the handbrake wheel failed to function properly."  (Pl.'s Br., Filing 51, at 20-21.)

Myers v. Reading Co., 331 U.S. 477, 483 (1947), provides the framework for my analysis of the plaintiff's claim[7]:

A railroad subject to the Safety Appliance Acts may be found liable if the jury reasonably can infer from the evidence merely that the hand brake which caused the injuries was on a car which the railroad was then using on its line, in interstate commerce, and that the brake was not an 'efficient' hand brake.  Furthermore—

"There are two recognized methods of showing the inefficiency of hand brakes equipment.  Evidence may be adduced to establish some particular defect, or the same inefficiency may be established by showing

---

[7]Myers, which is cited by both parties in their respective briefs, does not involve a federal railroad safety regulation; instead, Myers' FELA claim was based upon a provision of the FSAA that required railcars to be equipped with "efficient hand brakes."  Myers, 331 U.S. at 478 n.1.  That provision, which is now codified at 49 U.S.C. § 20302(a)(1)(B), is the subject of the plaintiff's third claim for relief.  (See infra Part III.C.)  The parties have invoked the same definition of "efficient" for the purposes of both 49 C.F.R. § 231.2 and 49 U.S.C. § 20302(a)(1)(B).  Therefore, my analysis of the plaintiff's second and third claims for relief will be identical.

a failure to function, when operated with due care, in the normal, natural, and usual manner."

   "Proof of an actual break or visible defect in a coupling appliance is not a prerequisite to a finding that the statute has been violated. Where a jury finds that there is a violation, it will be sustained, if there is proof that the mechanism failed to work efficiently and properly even though it worked efficiently both before and after the occasion in question. The test in fact is the performance of the applicance [sic]. Efficient means adequate in performance; producing properly a desired effect. Inefficient means not producing or not capable of producing the desired effect; incapable; incompetent; inadequate. . . ."

Myers v. Reading Co., 331 U.S. 477, 483 (1947) (quoting Didinger v. Pennsylvania R. Co., 39 F.2d 798, 799 (6th Cir. 1930); Spotts v. Baltimore & O.R. Co., 102 F.2d 160, 162 (7th Cir. 1938)) (citations omitted). In this case, it is undisputed that the plaintiff's alleged injuries occurred on a car that was "in use." However, the parties dispute whether the handbrake that allegedly injured the plaintiff was "efficient." The plaintiff's expert opines that the handbrake was inefficient (see Pl.'s Index, Filing 52, O'Brien Aff., Ex. 1, O'Brien Report at "Page 8 of 9"), and another witness has suggested that the handbrake "malfunction[ed]" (see Pl.'s Facts ¶¶ 19-20). Not surprisingly, the defendant's expert asserts that the handbrake was efficient, (see Def.'s Index, Filing 54, Peterson Aff. ¶ 4(i)-(ii)), and the defendant points out that the plaintiff has testified that the handbrake was functioning properly at the time of his accident. The defendant has also submitted evidence that the handbrakes on all "suspect" railcars passed inspection, and no defects were encountered.

  The plaintiff argues vehemently (and correctly) that he is not required to prove that the handbrake was defective in order to show that it was inefficient. (See generally Pl.'s Reply Br., Filing 55.) As I noted above, the plaintiff may establish the inefficiency of the handbrake by showing that it failed to function "when operated with due care, in the normal, natural, and usual manner." Myers, 331 U.S. at 484. However, the absence of an ascertainable defect does present some difficulty for the

plaintiff insofar as his motion for summary judgment is concerned. In essence, his claim is based upon his word, and the defendant has submitted evidence that would allow the trier of fact to discredit the plaintiff's word and conclude that no handbrake performed inefficiently. "The questions at issue [are] questions of fact," Myers, 331 U.S. at 484, and I am not to weigh the evidence or make credibility determinations at this stage of the case. Put differently, although the plaintiff is correct that the absence of evidence of a defect of some kind is not fatal to his claim, he is not entitled to summary judgment unless he shows that there is no genuine issue that the handbrake failed to function "when operated with due care, in the normal, natural, and usual manner." I find that the plaintiff has failed to make this showing.

In addition, I note that the plaintiff must establish "that the fact that the brake was not an efficient brake contributed to or caused" his injury. Myers, 331 U.S. at 484; see also Grogg v. Missouri Pac. R.R. Co., 841 F.2d 210, 212 (8th Cir. 1988) ("To recover for a violation of the FSAA Grogg had to show: (1) the statute was violated; and (2) the violation was 'a causative factor contributing in whole or in part to the accident' that caused her injuries." (Quoting Beimert v. Burlington N. Inc., 726 F.2d 412, 414- 415 (8th Cir. 1984))). Once again, the plaintiff has neglected the element of causation. Even if the handbrake in question is found to be inefficient, it does not necessarily follow that this inefficiency caused or contributed to the plaintiff's injury. For the reasons stated above, (see supra Part III.A), I find that there is a genuine issue for trial with respect to the causation element of the plaintiff's second claim for relief.

In sum, I find that the plaintiff is not entitled to summary judgment on his claim that he was injured by an inefficient handbrake in violation of 49 C.F.R. § 231.2.

## C.   The Plaintiff's Third Claim for Relief

In his third claim for relief, the plaintiff alleges that the defendant violated 49 U.S.C. § 20302(a)(1)(B), which, like 49 C.F.R. § 231.2, requires that railcars be equipped with "efficient hand brakes." For the reasons stated above (see supra Part

III.B), I find that genuine issues of material fact remain, and the plaintiff is not entitled to judgment on this claim as a matter of law.

IT IS ORDERED that the plaintiff's motion for summary judgment (Filing 50) is denied.

DATED this 2nd day of June, 2005.

> BY THE COURT:
> s/Richard G. Kopf
> United States District Judge